HARDY, Judge.
This is an action by plaintiff, a judgment creditor of the defendant, L. L. Phelps, to annul, avoid and set aside as simulated two deeds of conveyance, hereinafter particularly set forth, affecting certain described property consisting of 89 acres in Union Parish, Louisiana. Alternatively plaintiff prayed that the said deeds of conveyance be set aside and annulled as being attempts to give an unfair preference to the injury, prejudice and detriment of plaintiff. By way of additional relief plaintiff further asked to be decreed a privilege and preference on the property by priority over all other creditors. In connection with her suit plaintiff caused to be recorded a notice of lis pendens against the property described. After trial there was judgment in favor of defendants rejecting plaintiff’s demands and ordering the notice of lis pendens cancelled and erased, from which plaintiff has appealed.
On June 26, 1947 plaintiff’s husband was seriously injured in an automobile accident alleged to have been caused by the negligence of the defendant, L. L. Phelps, as the result of which injuries plaintiff’s husband died on July 29, 1947. On September 16, 1947 plaintiff filed suit for damages against L. L. Phelps in the Fourth Judicial District Court for Ouachita Parish, Louisiana. The defendant was cited and served on September 23, 1947 and judgment was rendered on January 20, 1948, signed on February 2, 1948, in favor of plaintiff, Mrs. Susan Crowell Hendricks, against L. L. Phelps in the principal sum of $25,000. Writ of fi. fa. was issued under the judgment on February 13, 1948, and was subsequently returned nulla bona.
On October 7, 1947 L. L. Phelps executed a cash deed conveying 89 acres of land in Union Parish, Louisiana, to his son, G. L. Phelps, as vendee, for a purported consideration of $1,000 in cash, which instrument was duly filed and recorded. By deed of conveyance under date of March 5, 1948 G. L. Phelps purportedly sold the same property to Vaughn L. Phelps, Sybil J. Carpenter and husband, W. B. Carpenter, Jr., and Benny L. Phelps, for a cash consideration of $1,000, which instrument was duly signed and recorded. These are the conveyances which plaintiff seeks to set aside. Made defendants are L. L. Phelps, plaintiff’s judgment debtor, his children, G. L. Phelps, Vaughn L. Phelps, Benny L. Phelps, Sybil J. Carpenter and her husband, W. B. Carpenter, Jr.
As grounds for relief plaintiff sets forth in her petition that at the time of the transfer from L. L. Phelps to G. L. Phelps *187 on October 7, 1947, she was a creditor of said L. L. Phelps; that the property conveyed by L. L. Phelps was the only real property ever owned or acquired by him; that L. L. Phelps has been insolvent at all times since July 29, 1947 (date of death of plaintiff’s husband); that prior and at all times since October 7,1947, G. L. Phelps had full knowledge of the insolvency of his father, L. L. Phelps, and full knowledge of all “business and property affairs” of his said father; that the purported deed from L. L. Phelps to G. L. Phelps was a myth, a sham, without reality, without payment of consideration, and was executed solely for the purpose of placing the property beyond the reach of the creditors of L. L. Phelps, and, generally, to prevent plaintiff from executing her judgment and collecting thereon, and that said transaction was part of a scheme or plan fraudulently devised and executed by the parties thereto who conspired for such purpose.
Alternatively the petition avers that in the event the court should determine the deed to have been executed for a proper consideration and that the said instrument was executed and existed in reality, then in such event that the vendee, G. L. Phelps, was a creditor of the vendor, L. L. Phelps, with knowledge of the latter’s insolvency, as the result whereof he was a party to a ■collusion and conspiracy in the perpetration of a fraud for the purpose of obtaining an unfair preference over and above all other creditors and aiding in the attempt to place the property beyond the reach of such other creditors and particularly the plaintiff.
With reference to the conveyance from G. L. Phelps to the other named defendants plaintiff made generally the same allegations and averments in support of her prayer for relief..
The record before us is made up of testimony of L. L. Phelps, Vaughn L. Phelps and G. L. Phelps, which latter was taken by deposition. Numerous exhibits are contained in the record, consisting of certified copies of the deeds which are under attack, bank statements from the Farmerville Bank of Farmerville, Louisiana, reflecting the account of L. L. Phelps; numerous can-celled checks of the said L. L. Phelps, and evidences of sales of a mineral lease and of mineral rights, in the property involved, by L. L. Phelps to various parties.
We first proceed to a discussion of the merits of plaintiff’s claims in connection with the deed of October 7, 1947, from L. L. Phelps to G. L. Phelps. It is obvious that if plaintiff has failed to establish her right to have this instrument set aside, there is no necessity for a consideration of the question of the validity, vel non, of the conveyance from G. L. Phelps to the other named defendants.
In the beginning it is well for us to observe that the transactions complained of reflect a number of circumstances which on their face are sufficient to arouse suspicion as to the validity thereof. The conveyance of property from a father to a son after filing of a suit involving a claim for substantial damages against the vendor is calculated to justify a serious investigation of the charges of fraud and simulation. But these suspicious circumstances in themselves, and standing alone, are not 'sufficient to justify a judicial pronouncement which would invalidate the conveyance. There are other factors that must be subjected to careful scrutiny which are vitally necessary to the expression of an opinion.
It is established that some seven years more or less prior to the execution of the instrument which is here challenged, L. L. Phelps and. his wife were divorced, and the four children all of whom are defendants in this action, removed with their mother from Farmerville to West Monroe, Louisiana. We think the record conclusively establishes the fact that after the divorce the children had no relationship with their father nor any knowledge of his affairs aside from that of a very casual nature. Despite plaintiff’s strong contention to the contrary we are convinced that G. L. Phelps was practically a stranger, or at most, had no more than a casual contact and association with his father. After the divorce, G. L. Phelps entered the armed services and apparently was disabled in such service. After his return he again lived with his mother for a brief period of time then was married and moved to Oklahoma where *188 he was living at the time of the execution of the deed of October 7, 1947.
Plaintiff’s counsel makes mention of the fact that L. L. Phelps testified to a close relationship with his son, but study of the record does not substantiate this contention. The only testimony by L. L. Phelps is to the effect that he "saw” his son, G. L. Phelps, more or less on frequent occasions, both in Farmerville and Monroe, but aside from this any conclusion as to a close relationship is purely speculative.
To the contrary both G. L. Phelps and his brother, Vaughn L. Phelps, testified that neither they nor the other children had any relationship with their father and they are emphatic in the declaration that they knew nothing of his business affairs and that they were both ignorant of the automobile accident until they were served with papers in this suit. There is not the slightest evidence in the record which would controvert this testimony.
Another important factor relates to the question of consideration and payment thereof. We think there is no possible doubt as to the fact that $1,000 was a fair, satisfactory and adequate valuation for the property conveyed. The timber had been cut off, there were no improvements of any substantial nature, and the vendor had stripped himself of the ownership of all mineral rights with the exception of a one-eighth interest. It is strenuously and urgently contended by counsel for plaintiff that this mineral interest was possessed of a substantial speculative value. We note that counsel has persisted in referring to this interest as being a one-eighth royalty interest. This is error in view of the fact that the interest is a one-eighth mineral interest which, as a consequence, carries only a one-sixty-fourth royalty interest. When we further consider the fact that the speculative value of the property, shortly prior to the transaction here involved, was derived from activity in connection with the discovery of a shallow producing horizon, and that a well drilled upon property immediately offsetting that which is involved in this action was nonproductive, resulting in a “dry hole”, it is evident that this element of value is unimportant.
The next point for consideration involves the question as to whether the consideration, recited in the deed as being $1,000 in cash, was actually paid. It is argued on behalf of plaintiff that there is a sharp conflict between the testimony of vendor and vendee as to the method and manner of payment. L. L. Phelps testified that he was paid by a personal check given by his son, dated contemporaneously with the deed of conveyance, and that he subsequently cashed the check some days later in Jackson, Mississippi. The son, G. L. Phelps, testified that he paid the consideration by a bank check of his Oklahoma banking connection upon its correspondent. In his testimony he explained that for this-reason he did not have a cancelled check but he offered to procure a photostatic copy from his bank if its production was desired. While observing the discrepancies in testimony we are not disposed to consider that they constitute even the slightest degree of affirmative proof in-support of plaintiff’s attack upon the validity of the payment of the consideration. On the contrary we are impressed with the straightforward testimony of the defendant, G. L. Phelps, whose deposition sets forth his answers to eighty-eight separate interrogatories propounded on cross examination by counsel for plaintiff. The answers of the witness were clear, frank, unambiguous and showed no attempt at evasion. In the absence of any direct con-troversion of this testimony, or any evidential facts or circumstances which would tend to detract from its credibility, we find no ground upon which it can be disregarded. Young Phelps gave, in more or less substantial detail, the source of his cash funds, his reasons for purchasing the property, and a consistent, reasonable history of the transaction. In the light of these considerations we can only hold that plaintiff has failed in her effort to establish a failure of payment of the recited consideration.
Next we turn to the charge of collusion and conspiracy, which is predicated upon the averments that the vendor and *189 vendee of the conveyance of October 7, 1947, father and son, were partners in a scheme to defraud, which charge embraces the possession by the vendee of knowledge and information of his vendor’s financial affairs and of the facts and circumstances in connection with the automobile accident, and the resulting pending suit by this plaintiff against his father. As we have above pointed out, we are convinced that there was no relationship between L. L. Phelps and G. L. Phelps, at or for several years prior to their business transaction, which would sustain plaintiff’s contention that there was a close even an intimate association. We think it is implicit in the record that the relationship between L. L. Phelps and his former wife and his children was not only strained, but, indeed, we do not find that there was any existing relationship between these parties subsequent to divorce. G. L. Phelps testified positively that he knew nothing of his father’s affairs; had never heard of the accident, and that only by hearsay or rumor had he been informed that his father had substantially benefitted from cash sales of a lease and mineral rights on the property. Testimony to the same effect was given by another son, Vaughn L. Phelps, who likewise denied any knowledge of his father’s affairs, and who, in answer to a question as to such knowledge, bluntly answered:
“No; I didn’t know anything about my father — period.”
Against this positive testimony plaintiff has sustained no real attack except in the nature of conclusions which are based upon the purest speculation. For example, it is urged that plaintiff’s deceased husband was a man of some prominence in his community; that the newspapers carried accounts of the accident; that the facts were matters of common knowledge. From these speculations, which are not supported by any sort of proof and which are only advanced by way of argument, plaintiff concludes that the denial of this knowledge so imputed cannot be accepted. To so hold would necessitate a complete rejection of what appears to be credible testimony ■ in favor of imaginative conclusions totally unsupported by any acceptable evidence. It follows that plaintiff’s claims and contentions in this respect must be rejected.
Plaintiff’s charge that L. L. Phelps was hopelessly insolvent on October 7, 1947 and at all times since, like the other allegations upon which plaintiff relies, has failed for want of proof. To the contrary, L. L. Phelps testified, and his testimony is not contradicted, that at the time he was possessed of certain assets which totaled some thousands of dollars in value. It is established that during the spring and summer of 1947 L. L. Phelps had received something in the neighborhood of $16,000 in cash derived from the sale of a lease and mineral rights on the property here involved. It is quite true that reference to his statement of account with the Farmerville Bank shows that he did not have any substantial amount on deposit at this time, but this in itself is not sufficient to destroy the effect of his testimony as to his financial condition.
We do not find any substantiation for the claim that the sale from L. L. Phelps to G. L. Phelps was intended as a matter of convenience and protection to the former, and that the purported vendee took title to the property with the intention and purpose of holding the same for the benefit of his vendor. There is not a single fact in the record which would sustain this conclusion. Nor is there any evidence of the existence of the relationship of debtor and creditor as between L. L. Phelps and G. L. Phelps, the parties to the deed of October 7, 1947.
Careful consideration has served to convince us beyond any question that plaintiff has entirely failed to establish the validity of any charge or charges which would support a finding of fraud as against the parties defendant or of simulation with respect to the deed of conveyance which has been under discussion in this opinion. Any suspicious circumstances in connection with the transaction have been completely overcome by positive and convincing proof on the part of defendants. We are strengthened in this conclusion by the knowledge that it accords with the finding of our brother of the district court who had at first *190 hand the opportunity to hear and observe the witnesses who were tendered in open court.
In view of our findings of fact which support the validity of the deed from L. L. Phelps to G. L. Phelps, we cannot perceive that any useful purpose would be served by a discussion of the subsequent conveyance from G. L. Phelps to the other defendants since the effect of our findings from such consideration could not in any event result in the granting of the relief sought by plaintiff.
For the reasons assigned the judgment from which appealed is affirmed at appellant’s cost.